IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN G. HARTWIG, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 4:13-CV-350 |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff John Hartwig's applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. PROCEDURAL HISTORY & PERSONAL BACKGROUND

Plaintiff John Hartwig ("Plaintiff" or "Hartwig") filed applications for Supplemental Security Income benefits and Disability Insurance benefits on January 20, 2010. (Tr. 11, 116, 123). Hartwig alleged he became disabled on December 16, 2009 due to back and head problems. (Tr. 116, 123, 147). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 65-70, 84-89).

1

At Hartwig's request, administrative law judge ("ALJ") James Hill convened an administrative hearing on November 9, 2011 to evaluate his applications. (Tr. 90-93, 27-60). Plaintiff, represented by counsel, appeared and testified before the ALJ. (Tr. 27-60). A vocational expert ("VE"), Lynn Smith, also appeared and testified. (*Id.*). On November 23, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 11-20). After applying the five-step sequential analysis,[1] the ALJ determined Hartwig retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 4-5). The Appeals Council denied the request for review, making the ALJ's November 23, 2011

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Hartwig was born on December 28, 1956, and was 54-years-old on the date the ALJ rendered his decision. (Tr. 33, 61). Accordingly, he was considered as a "person closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff completed high school and had previous work experience as an automobile salesman. (Tr. 18, 34, 55-56).

## II. MEDICAL EVIDENCE

On December 16, 2009, Hartwig reported to the emergency room at St. Elizabeth Health Center after having fallen through a ceiling ten days prior. (Tr. 226). Hartwig told Robert Gershkowitz, M.D., that he had not experienced pain at the time of the fall, but that he gradually began to experience pain in his lower back and ribs. (*Id.*). Plaintiff did not experience numbness in his arms or legs. (*Id.*). An MRI of Plaintiff's lumbar spine showed a compression fracture at T12 and L1 and degenerative disc disease at L5-S1. (Tr. 248). An MRI of Plaintiff's thoracic spine showed mild asymmetric compression of the anterior thecal sac at T12-L1, without compression of the cauda or neural foramina. (Tr. 250). A CT scan of the brain showed a "subacute left frontal hematoma." (Tr. 237). Chander Kohli, M.D., assessed left frontal hematoma, T12 and L1 compression fractures, alcohol abuse, and tobacco abuse. (*Id.*).

Hartwig remained hospitalized and underwent a vertebroplasty of T12 and L1 on December 17, 2009. (Tr. 212, 230, 239). He was discharged the following day and told not to lift more than five to ten pounds, or perform twisting or bending. (Tr. 212). Hartwig was prescribed Darvoct for pain. (Tr. 231).

Upon a follow-up examination on January 25, 2010, Dr. Kohli concluded that Hartwig's left frontal hematoma had healed. (Tr. 262). Hartwig's spine showed post-surgical changes without other abnormality. (*Id.*). Dr. Kohli also found Hartwig's lumbar spine to be normally aligned.

On January 27, 2010, Dr. Kohli indicated that Hartwig was "doing well" post-surgery. (Tr. 256). Though Hartwig still experienced "some paraspinal muscle tenderness in the lumbar spine," his back pain was improving and he was walking well. (*Id.*). Additionally, Plaintiff's motor strength was five out of five, his x-rays were normal, and his vertebroplasty sites intact. (*Id.*). Dr. Kohli advised Hartwig to follow up on an as-need basis. (*Id.*). The record does not reflect any further treatment with Dr. Kohli or any other medical provider for Hartwig's physical condition.

On April 20, 2010, state agency reviewing consultant, Myung Cho, M.D., evaluated Plaintiff's medical records. (Tr. 278). Dr. Cho concluded that Hartwig's physical conditions were not severe, because they were not expected to last longer than twelve months. (*Id.*).

On April 23, 2010, Kenneth Gruenfeld, Psy.D., conducted a psychological consultative examination. (Tr. 280-85). Plaintiff denied a history of any mental health treatment or use of psychotropic medication. (Tr. 283). Hartwig reported that he was self-employed and works on his friend's farm completing odd jobs, which he has done for a number of years. (Tr. 280). Hartwig described his falling accident, which has since caused him problems with walking, running, bending over, squatting, or lifting heavy objects. (Tr. 281). Hartwig reported that he struck his head during the fall, causing him short- and long-term memory loss. (*Id.*).

Dr. Gruenfeld conducted a psychological test on which Hartwig scored in the average range of intellectual functioning. (Tr. 281). Plaintiff's scores in memory functioning all fell into

4

the range of low average functioning, except for his delayed memory index, which fell into the borderline range of functioning. (Tr. 281-82). Nonetheless, Plaintiff stated his cognitive functioning did not impact his ability to pay bills or conduct complicated house chores that require several steps to achieve. (Tr. 282). Dr. Gruenfeld described Hartwig as cooperative with good task motivation. The doctor also observed that Plaintiff's persistence, attention, concentrating, and response to direction were good. Hartwig's conversation was logical and his affect was appropriate. Although Hartwig reported some problems with sadness and low self-esteem, Dr. Gruenfeld felt that Hartwig did not appear depressed or anxious during the evaluation. (Tr. 281, 282).

Dr. Gruenfeld diagnosed adjustment disorder with depressed mood. (Tr. 285). In regard to work-related mental abilities, Dr. Gruenfeld opined that Hartwig would be mildly impaired in relating to others; moderately impaired with his mental ability to understand and follow instructions; mildly impaired in concentration, persistence, or pace; and mildly impaired in his ability to withstand stress and pressure associated with day-to-day work activity. (Tr. 284).

In July 2010, John Waddell, Ph.D., a state agency psychologist, conducted a review of Hartwig's medical evidence. (Tr. 301-04). Dr. Waddell concluded that Plaintiff can perform simple and detailed repetitive tasks that do not require a rapid pace, and that Plaintiff is able to deal with people, including the general public. (Tr. 304). In October 2010, a second state agency psychologist, Marianne Collins, Ph.D., reviewed the record and affirmed Dr. Waddell's assessment. (Tr. 306).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since December 16, 2009.

3. The claimant has the following severe impairments: compression fracture of T12-L1 status post vertebroplasty, degenerative disc disease of the lumbar spine, and adjustment disorder with depressed mood.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except the claimant can understand, remember and carry out simple and detailed (but not complex) instructions.  He requires a low stress workplace without strict quotas or high production demands.  The claimant can have occasional contact with the public and coworkers provided transactional activities such as negotiation, arbitration, and potentially confrontational situations are avoided.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on December 28, 1956 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2009, through the date of this decision.

(Tr. 13-19) (internal citations omitted).

6

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, it

7

may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff takes issue with the ALJ's failure to credit his subjective complaints of pain and with the ALJ's formulation of the residual functional capacity. To the extent that the Court was able to decipher these arguments, they do not present a basis for remand in this case.

### A. Claimant's Credibility

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

This circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers*, 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an

8

impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id*.  The ALJ should consider the following factors in evaluating the claimant's symptoms:  the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; *see also* SSR 96-7p.

Here, the ALJ acknowledged Hartwig's subjective complaints regarding his symptoms and limitations. (Tr. 16).  With respect to his mental impairments, Plaintiff stated he was depressed, experienced feelings of hopelessness, had difficulties with concentration and focus, and experienced constant headaches and significant memory loss. (Tr. 16, 44-45, 169).  In terms of physical impairments, Hartwig stated he could stand for fifteen minutes and walk 200-400 yards. (Tr. 41-42).  Plaintiff also indicated that he experienced numbness in his left hand and could lift up to twenty pounds, but doing so would cause pain. (Tr. 44, 50).

Although the ALJ found that Hartwig's impairments could reasonably be expected to cause the symptoms he alleged, the ALJ concluded that Hartwig's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 16). Taking into account the factors set forth in the regulations, the ALJ explained why he did not fully credit Hartwig's subjective assessment of his capabilities.  While Plaintiff appears to argue that his subjective complaints of pain and other limitations should have been fully credited to

9

support a finding of disability, the Court finds that ALJ's credibility determination is supported by substantial evidence.

In support of his credibility determination, the ALJ noted that the medical evidence of record did not support the serious symptoms and limitations Hartwig expressed. For example, Dr. Gruenfeld did not observe Hartwig to display any depressive symptoms during his consultative examination, contrary to Hartwig's complaints. (Tr. 16, 283). Additionally, the doctor found Plaintiff's persistence, attention, and concentration were good. Overall, Dr. Gruenfeld's assessment of predominantly mild work-related limitations, with one moderate limitation, did not support the purportedly disabling limitations that Hartwig alleged. (Tr. 18, 284). The same holds true for Plaintiff's subjective complaints related to his physical condition. Although there is not a great deal of medical evidence following Plaintiff's falling accident, the medical evidence of record does not support the full extent of Plaintiff's self-assessed limitations. For example, the evidence shows that about one month after his back procedure, Dr. Kohli found Hartwig to be doing well, walking normally, and displaying normal strength. (Tr. 17, 256).

The ALJ also pointed out that Hartwig "has had very little ongoing treatment for his medical conditions," which the ALJ reasonably concluded was inconsistent with the degree of limitations Hartwig alleged. (Tr. 18). Following his January 27, 2010 surgical follow-up with Dr. Kohli, the record does not reflect any further treatment for Hartwig's back injury. Plaintiff also sought no medical treatment for his depression. The ALJ took into consideration Hartwig's ability to afford treatment, acknowledging that during the hearing, Hartwig stated he does not regularly see a doctor because he is uninsured. (Tr. 18, 49-50). However, the ALJ also pointed out good reason for questioning whether financial constraints truly belied Hartwig's failure to

pursue medical treatment. The ALJ observed that Hartwig chose not to take prescription pain medication because he preferred not to, rather than because of any financial reason. (Tr. 18, 39). This fact throws into question whether Plaintiff's inability to pay for medical services was the true reason that he chose not to pursue treatment.

Finally, the ALJ noted that Plaintiff stopped working because his place of employment closed, not because his physical and mental impairments interfered with his work. (Tr. 147-48). Plaintiff stopped working in December 2008, which was approximately one year before the accident which resulted in his back and head injuries. (*Id.*). This fact, taken with others cited above, supports the ALJ's decision to question whether Hartwig's medical impairments, though limiting, limited him to the extent that he professed. The ALJ's explanations for partially discrediting Hartwig are reasonable and supported by substantial evidence in the record. Accordingly, the ALJ was not required to fully adopt Hartwig's allegations.

## B. Residual Functional Capacity Finding

Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities despite functional impairments stemming from the claimant's medically determinable limitations. 20 C.F.R. §§ 404.1545, 416.945; *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ, as opposed to a physician, is ultimately responsible for determining the claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); 20 C.F.R. § 404.1546(c).

11

Here, in terms of Hartwig's physical RFC, the ALJ concluded that Hartwig could perform medium work, as defined by 20 C.F.R. 404.1567(c) and 416.967(c).[2] (Tr. 15). Plaintiff argues that the ALJ should have adopted a more restrictive physical RFC assessment. More specifically, Hartwig purports that he was capable of no more than sedentary work.[3] Plaintiff asserts that a residual functional capacity for sedentary work, given his age, education and skills, requires a finding of "disabled" under the Commissioner's Medical-Vocational Guidelines ("the grids"). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14. (recommending that an individual closely approaching advanced age, with high school degree, with skills that are not transferable is disabled).

To support the finding of a more restrictive RFC, Plaintiff points to a medical record from his hospital discharge post-vertebroplasty, which instructed him not to lift over five to ten pounds. (Tr. 212). The medical record prescribing the limitation was dated December 18, 2009, the day that Plaintiff was discharged after his back procedure. (*Id.*).

The ALJ acknowledged this medical record, but attributed little weight to the limitation prohibiting Hartwig from lifting no more than ten pounds. (Tr. 17). In doing so, the ALJ acted reasonably. The hospital record does not state how long the limitation was in place. Given that the limitation was part of Plaintiff's discharge instructions, the ALJ concluded that the limitations were for a limited amount of time. (*Id.*). Additionally, the ALJ noted that the record "does not show any consistent ongoing symptoms that would continue to limit the claimant to

---

[2] The regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

such a degree." (*Id.*). There is support in the record for this observation; for example, Dr. Kohli did not impose any limitations during Plaintiff's follow-up examination, which occurred approximately one month after Plaintiff was discharged from the hospital. Thus, the ALJ reasonably concluded that the strict lifting limitation was not an accurate representation of Hartwig's long-term limitations, but instead a temporary limitation necessitated by Plaintiff's verteborplasty procedure.

Hartwig emphasizes that the lifting limitation was imposed before his date last insured of December 31, 2009 and his application filing date of January 29, 2010. However, this observation is of no import. Even though the limitation was imposed prior to the date last insured, Plaintiff bears the burden to show that the restriction lasted beyond his surgical recovery period and continued to restrain his functioning. He has failed to do so.

Plaintiff also points to notes from a clarifying phone call made by Craig Walter on behalf of the Social Security Administration on February 17, 2010. Walter's notes from the call stated the following:

> Clt is able to lift 10 lbs and can walk 300 yards before needing to take a rest. Clt can stand 15-20 mins at a time before needing to rest. Clt said sitting in a straight back chair helps the pain in his back.

(Tr. 169). Based on a review of Walter's notes, the above quoted passage contains Plaintiff's self-reports of his abilities. While subjective complaints of a claimant can support a claim of disability if there is also objective medical evidence of the condition in the record, an individual's statements as to "pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a). In fashioning the RFC and corresponding hypothetical question, an ALJ is not required to accept a claimant's subjective complaints, and "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems

13

the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (*citing Townsend v. Secretary of Health & Human Servs.*, 762 F.2d 40, 44 (6th Cir. 1985)). Here, the ALJ reasonably concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were less than fully credible and not fully supported by objective medical evidence. (Tr. 16, 18). As a result, the ALJ was not required to adopt the limitations in his RFC.

When formulating the RFC, the ALJ provided a thorough analysis of the evidence relating to Plaintiff's physical health. (Tr. 17). The ALJ noted that despite a compression fracture, Hartwig's vertebroplasty follow-up examination showed that he was recovering very well overall. (Tr. 17, 256). Upon physical examination, Dr. Kohli found Plaintiff was walking well and his strength was normal. (*Id.*). Plaintiff did not seek additional medical attention for his back after this session with Dr. Kohli. Although state agency examiner Dr. Cho opined that Plaintiff's conditions were not expected to last more than twelve months, and therefore did not result in any limitations, the ALJ gave little weight to Dr. Cho's opinion. (Tr. 17, 278). The ALJ attributed such weight because the medical record, along with Hartwig's testimony, showed that some limitations stemming from Hartwig's back injury have lasted twelve months and are expected to continue. Based on the medical evidence supplemented by Plaintiff's statements, the ALJ reasonably concluded that Plaintiff was capable of work at the medium exertional level.

Substantial evidence also supports the ALJ's RFC finding with regard to Hartwig's mental impairments. The ALJ took into account Drs. Gruenfeld and Waddell's assessments, as well as Plaintiff's subjective complaints to the extent credible, to conclude that Hartwig was able to understand, remember, and carry out simple and detailed, but not complex, instructions. (Tr. 15-17). Hartwig also required a low stress workplace without strict quotas or high production

14

demands.  Additionally, Hartwig could have occasional contact with the public and co-workers, provided that transaction activities like negotiation, arbitration, and potentially confrontational situations are avoided. (*Id.*).  Plaintiff does not appear to argue that the ALJ failed to properly accommodate his mental limitations in the RFC.

The VE identified three jobs—cleaner, kitchen helper, and hand packager—that Plaintiff would be able to perform at the medium exertional level, while taking into account Plaintiff's mental limitations. (Tr. 56-57).  Additionally, the VE identified two jobs at the light exertional level, mail clerk and assembler of electrical components, which Plaintiff would be capable of performing, given his mental limitations. (Tr. 57-58).

Plaintiff argues that the ALJ's questioning of the VE serves as evidence of disability.  During the hearing, the ALJ posed a hypothetical question to the VE based on an individual with Plaintiff's mental limitations as set forth in the RFC, but who could only stand or walk for up to four hours and required a sit-stand option every thirty minutes. (Tr. 58).  The VE identified one job at the sedentary level. (*Id.*).  The VE also stated that there were no transferable skills from Plaintiff's past work. (Tr. 59).  The ALJ indicated that under the grids, if Plaintiff were to be limited to sedentary work and had no transferable skills, he would be entitled to a favorable decision. (*Id.*).  Nonetheless, this testimony is not affirmative evidence of disability.  The ALJ reasonably concluded that Plaintiff could perform more than sedentary work, and as a result, he was not bound by this hypothetical question.  Because the ALJ's determination is supported by substantial evidence, remand is not appropriate.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

                                                  s/ Kenneth S. McHargh
                                                  Kenneth S. McHargh
                                                  United States Magistrate Judge

Date:  February 27, 2014.